**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: H.W. (Minor Child) AND B.M. (Father); B.M., | ) ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A02-1308-JT-722 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry E. Bradley, Magistrate
Cause No. 49D09-1303-JT-3326

**March 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

B.M. (Father) appeals the termination of his parental rights upon petition of the Marion County Department of Child Services (DCS). Father's sole issue is whether DCS established by clear and convincing evidence the requisite statutory elements to support the termination. We affirm.

**Facts and Procedural History**

H.W. was born on October 31, 2004. Her parents are Father and R.W. (Mother). H.W. has lived with her maternal grandmother (Grandmother) since she was an infant pursuant to an informal verbal agreement between Mother and Grandmother. In February 2012, Mother gave birth to J.W., who tested positive for cocaine and opiates.[1] Mother admitted to a DCS case worker that she had used cocaine and Vicodin during the first six months of her pregnancy and smoked a cigarette laced with cocaine two days prior to giving birth. She also told the case worker that her current housing was not appropriate for her newborn son. During the course of its investigation, DCS learned that H.W. had never lived with her mother. On February 29, 2012, DSC filed a petition alleging that H.W. and J.W. were Children in Need of Services. Both children were placed in relative care with Grandmother.

According to the petition, Father's address was unknown. The DCS case worker was unable to find him in any databases. In April 2012, however, the case worker determined that Father was incarcerated in Ohio. Although Father was incarcerated during the

---

[1] J.W.'s father is J.D. His parental rights have been terminated.

proceedings, the court appointed counsel to represent him at the hearings. On June 12, 2012, the court adjudicated H.W. and J.W. to be children in need of services. A January 2013 review hearing revealed that Father had been released from incarceration in Ohio but had failed to contact DCS. Father's counsel advised the court that he had had no contact with his client. DCS requested that the permanency plan be changed from reunification with parents to adoption.

On January 28, 2013, DCS filed a Petition to Terminate the Parental Relationships between H.W. and her parents, and J.W. and his parents. Testimony at the July 24, 2013, termination hearing revealed that Father's criminal history includes 2005 convictions for child molesting as a class C felony and dealing in a sawed off shotgun. He was incarcerated in Ohio for armed robbery. When he was discharged from prison in Ohio in June 2012, he was incarcerated in Indiana for failing to register as a sex offender. He was released from prison in Indiana on January 31, 2013. Although the termination petition had just been filed, B.M. did not contact DCS. He claims that his mother, H.W.'s paternal grandmother, supervised his visits with H.W.

B.M. lives in Dayton, Ohio. He is married and has a four-year-old son and two-year-old daughter. At some point in 2012, both children were removed from their parents and sent to live in Indianapolis with their paternal grandmother. The children were returned to their mother in Ohio in July 2013. Father still does not live with his wife and children, and his visits with the children have to be supervised by their mother because of Father's prior conviction for child molesting. Father has never provided food, clothing, or shelter to H.W.

3

The evidence further revealed that H.W. is flourishing in Grandmother's care. She is a good student, who participates in extra-curricular activities such as karate and cheerleading, and she and Grandmother have a strong bond. DCS case manager Alicia Walker testified that she believes termination of the parent-child relationship with Father is in H.W.'s best interests. Guardian Ad Litem Kimberly Hollabaugh testified that H.W. needs permanency and stability, which Grandmother provides. Following the hearing, the trial court issued an order terminating Father's parental rights on July 29, 2013.[2]

**Discussion and Decision**

Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147

---

[2] Mother's parental relationships with H.W. and J.W. were also terminated. Mother is not a party to this appeal.

(Ind. 2005).  The purpose of terminating parental rights is not to punish the parents, but to protect their children.  In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the following relevant elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

  (B)   that one (1) of the following is true:

       i.   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

       ii.  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

       iii. The child has, on two (2) separate occasions, been adjudicated a child in need of services;

  (C)   that termination is in the best interests of the child; and

  (D)   that there is a satisfactory plan for the care and treatment of the child.

If the court finds that DCS has proven the required statutory elements, the court shall terminate the parent-child relationship.  I.C. § 31-35-2-8(a).  A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions.  In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied.  The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child."  Id.

Father contends that there is insufficient evidence to support the termination order. Specifically, he argues that there is insufficient evidence that 1) there is a reasonable

5

probability that the conditions that resulted in the removal or the reasons for placement outside the home would not be remedied and that 2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

However, Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and the court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Because we find it to be dispositive under the facts of this case, we consider only whether the DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." In re A.I., 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), trans. denied.

Here, our review of the evidence reveals that H.W. was removed because neither parent was then able to provide her with a home, necessities, or supervision. Specifically, Father has been incarcerated for most of H.W.'s life. When he was released from incarceration just a few days after DCS filed the termination petition, Father failed to contact DCS to let the case worker know that he had been released from prison. He also failed to attend the termination hearing. The evidence further reveals that he has to have supervised visitation with his two young children in Ohio. He has never provided H.W. with food, clothing or shelter. This evidence supports the trial court's finding that there is a reasonable

6

probability that the conditions that resulted in the removal or the reasons for placement outside the home would not be remedied.

Father also argues that there is insufficient evidence that termination of the parent-child relationship is in H.W.'s best interests. In determining what is in a child's best interests, the trial court is required to look beyond the factors identified by the DCS and consider the totality of the evidence. McBride v. Monroe County Office of Family and Children, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the trial court must subordinate the interests of the parents to those of the children. Id. The trial court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. Id. In addition, this court has previously determined that the testimony of the child's guardian ad litem regarding the child's need for permanency supports a finding that termination is in the child's best interests. Id. Here, GAL Hollabaugh testified that H.W. needs permanency, and this was best accomplished by remaining in Grandmother's home. This testimony supports the finding that termination is in H.W.'s best interests.

## Conclusion

DCS established by clear and convincing evidence the requisite elements to support the termination of Father's parental rights.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.

7